

ORIGINAL

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

FEB 5 2008

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

AT&T MOBILITY LLC and AT&T          §
MOBILITY II LLC,                    §
                                    §
        Plaintiffs,                 §
                                    §        CASE NO.: _____
v.                                  §
                                    §        308 CV - 198 - M
WIRELESS EXCLUSIVE USA, LLC, A Texas §
Limited Liability Company; MOIZ KHOJA; §
JOHN DOES 1-50; XYZ COMPANIES 1-50, §
                                    §
        Defendants.                 §

---

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND JURY DEMAND

Plaintiffs, AT&T MOBILITY LLC and AT&T MOBILITY II LLC (collectively "AT&T"), sue Defendants, WIRELESS EXCLUSIVE USA, LLC ("Wireless Exclusive"), MOIZ KHOJA ("Khoja"), JOHN DOES 1-50, and XYZ COMPANIES 1-50 (collectively "Defendants"), and state:

### INTRODUCTION AND BACKGROUND

1.      This is an action for damages and injunctive relief arising out of Defendants' unlawful business enterprises that willfully infringe on AT&T's trademark rights, and other rights related to AT&T's GoPhone® wireless service and AT&T's specially manufactured GoPhone® wireless telephones ("GoPhones").

2.      As set forth in greater detail below, Defendants are engaged in, and knowingly facilitate and encourage others to engage in, unlawful business practices involving the unauthorized and unlawful bulk purchase and resale of GoPhones, unauthorized and unlawful

Dockets.Justia.com

computer unlocking of GoPhones, alteration of proprietary software computer codes installed in the GoPhones, and trafficking of the GoPhones for profit (the "Illicit Bulk Resale Scheme").

3.      Defendants perpetrate their Illicit Bulk Resale Scheme by acquiring large quantities of GoPhones from retail stores, and by soliciting others ("Runners") to purchase GoPhones in large quantities for the benefit of Defendants. Defendants remove the AT&T GoPhones' original packaging and accessories, copies of the written warranties and ownership manuals, and ship the GoPhones overseas, unlocked or to be unlocked, for resale for substantial profit.

4.      Defendants acquire the GoPhones with the knowledge and intent that the GoPhones will not be activated for use on the AT&T wireless network as required by the terms of the GoPhone contracts. Instead, the GoPhones are computer-hacked. The purpose of this hacking, known as "unlocking," is to disable software installed in the GoPhones by the manufacturers at the request and expense of AT&T, which enables the use of the GoPhones exclusively on AT&T's wireless system. The purpose of the software is to allow AT&T to offer the GoPhones at a discount to the consumer while protecting AT&T's subsidy investment in the GoPhone. The illegally unlocked GoPhones are trafficked and resold as new by Defendants, at a premium, under AT&T trademarks.

5.      AT&T permits its legitimate customers to unlock their GoPhones upon request and if certain conditions are satisfied, including prior activity on the GoPhones. Defendants and others who seek to improperly unlock GoPhones for the purpose of illicitly profiting from their fraudulent resale are prohibited from doing so.

6.      In an effort to prevent these unlawful business practices, AT&T's retailers have, under AT&T's direction, implemented policies limiting the number of GoPhones an individual

may purchase. Defendants, through their Illicit Bulk Resale Scheme, have taken steps to circumvent these policies by, among other things, employing large numbers of Runners to make multiple purchases of GoPhones on behalf of the Defendants.

7.     Defendants' conduct, together with that of currently unknown actors engaging in schemes similar to that of Defendants, is causing AT&T to suffer millions of dollars in losses and has caused immediate and irreparable injury to AT&T and to the AT&T and GoPhone trademarks.

8.     All conditions precedent to filing this action have been performed, waived or excused.

9.     AT&T has retained the undersigned attorneys to represent it in this action and has agreed to pay its attorneys a reasonable fee for their services.

## PARTIES, JURISDICTION, AND VENUE

10.     This is an action for damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

11.     AT&T MOBILITY LLC is a Delaware limited liability company, with its headquarters located in Atlanta, Georgia.

12.     AT&T MOBILITY II LLC is a Delaware limited liability company, with its headquarters located in Atlanta, Georgia.

13.     Moiz Khoja is an individual who, upon information and belief, resides at 3620 Huffines Blvd. # 528, Carrollton, Texas  75010.

14.     Moiz Khoja has conducted business, and continues to conduct business, in the State of Texas in his individual capacity.

15.     Moiz Khoja is registered to do business in Dallas County under the assumed name Wireless Exclusive.

16.     Wireless Exclusive USA, LLC, is a Texas corporation and maintains its principal place of business at 2548 Southwell, Dallas, Texas 75229.

17.     Upon information and belief, yet to be identified John Does and Jane Does 1-50 are present and/or doing business in Texas, and are subject to the jurisdiction of this Court. The identities of the various John and Jane Doe defendants are not presently known and the Complaint herein will be amended to include the name or names of these individuals when such information becomes available.

18.     Upon information and belief, the XYZ Companies, 1-50, through their agents, servants, and employees are present and/or doing business in Texas and are, or shall be, subject to the jurisdiction of this Court. The identities of such defendants are not presently known and the Complaint herein will be amended to include the names of the actual defendants when such information becomes available.

19.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1338, because AT&T's claim for violations of the United States Trademark Act (15 U.S.C. § 1051 *et seq.*), arises under federal law. This Court has supplemental jurisdiction over AT&T's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

20.     The Defendants are subject to the personal jurisdiction of this Court as residents of the State of Texas. If Defendants are determined not to be residents of the State of Texas, they are subject to personal jurisdiction (i) pursuant to Tex. Code Ann. § 17.042(1) because the Defendants have contracted with a Texas resident and at least one of the parties to the contract

performed the contract, or was to perform the contract, in whole or in part, in the State of Texas; (ii) pursuant to Tex. Code Ann. § 17.042(2) because the Defendants have committed tortious acts within the State of Texas; (iii) because the Defendants have caused injury to persons within this State arising out of an act or omission by the Defendants outside of this State while the Defendant was engaged in solicitation or service activities within this State; and (iv) because the Defendants breached a contract in this State by failing to perform acts required by the contract to be performed in this State.

21. The Defendants are also subject to this Court's personal jurisdiction because the Defendants are engaged in substantial and not isolated activity within this State.

22. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. §§ 1391(a) and (b), and 28 U.S.C. § 1400 because the corporate Defendant maintains its principal places of business in this district, the individual Defendants reside in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Moreover, the impact of Defendants' misconduct occurred in this District, a significant part of Defendants' misconduct occurred in this District, and the Defendants are subject to personal jurisdiction in this District.

## AT&T'S BUSINESS MODEL

23. AT&T, formerly Cingular Wireless, is the largest wireless carrier in the United States, with more than 65 million subscribers who use the nation's largest digital voice and data network. AT&T is dedicated to providing customers with wireless technology designed to enrich their lives. In addition, AT&T provides wireless service to 95 percent of the Fortune 100 companies and has more than 80 percent of the Fortune 500 companies and more than 1,200 federal, state, and local government agencies as customers.

24.     AT&T's GoPhone service enables its customers to prepay for their wireless service by purchasing airtime to be used in connection with specially manufactured wireless phones. Customers purchase airtime for their AT&T GoPhones online or through airtime cards. In addition to being available through AT&T online and in its stores, AT&T GoPhones and airtime cards are sold by major national retailers.

25.     The AT&T GoPhone business model is based upon AT&T's ability to deliver an affordable product to its consumers. Therefore, AT&T generally subsidizes its customers' acquisition of the GoPhones by selling them for substantially less than the GoPhones' overall cost to AT&T. AT&T recoups this subsidy through the sale of prepaid airtime that is required to receive service on the GoPhones. AT&T is able to offer its GoPhones at affordable prices only if the phones are used as intended on the AT&T service network.

26.     Manufacturers that produce GoPhones for AT&T install proprietary software, requested and paid for by AT&T, into the AT&T GoPhones. The AT&T software locking devices prevent AT&T GoPhones from being activated on another wireless network.

## AT&T'S TRADEMARK RIGHTS

27.     AT&T Mobility II, LLC owns the following United States Trademark Registrations:

>       (a)     Incontestable United States Trademark Registration No. 1,556,587 for GO PHONE, used in connection with "cellular telephones" in International Class 9, issued on September 19, 1989 and based on a first use date of October 8, 1987;

>       (b)     Incontestable United States Trademark Registration No. 2,048,570 for GO PHONE, used in connection with "telecommunications services, namely electronic transmission of messages, voice messages, information and data, paging services; electronic audio and/or audiovisual voice messaging services, namely the recording, storage and subsequent transmission of audio and/or audiovisual voice messages in digital format" in International Class 38, issued on April 1, 1997 and based on a first use date of May 1, 1994;

(c)     United States Trademark Registration No. 2,911,779 for GOPHONE, used in connection with "Telecommunications services, namely wireless transmission, uploading and downloading of voice, data, images, audio, video, signals, software, information, games, ring tones, and messages; wireless telephone services; providing wireless calling plans; wireless voice messaging services; call forwarding services; wireless text and numeric digital messaging services; electronic mail services; paging services; facsimile transmission services; Internet service provider and online service provider services, namely, providing multiple user access to a global computer information network, the Internet, wide area networks, local area networks, and private computer information networks; telecommunication services that allow users to perform electronic business transactions via wireless telephones, personal digital assistants, handheld computers, and mobile data receivers and through a global computer information network, the Internet, wide area networks, local area networks and private computer information networks; wireless roaming services; telecommunications consulting; telematics services; telemetry services" in International Class 38, issued on December 14, 2004 and based on a first use date of April 30, 2003; and

(d)     United States Trademark Registration No. 2,911,780 for GOPHONE, used in connection with "computer software for use in the telecommunications industry, namely, computer software for the activation, billing and operation of wireless telecommunications services; telecommunications equipment and electronic communications products, namely, PC card for connecting cellular phones to computers to act as wireless modems cable for connecting cellular phones to computers to act as wireless modems, batteries, battery chargers, wireless modems, antennas, carrying cases for wireless handheld devices, hands-free kits including microphones, earphones, and headset adapters, faceplates, telephones that provide multiple-user access to a global computer network and related accessories, wireless application protocol (WAP) receivers and transmitters, GPRS protocol receivers and transmitters, digital telephones; wireless handheld devices, namely, handheld computers; wireless telephones; cellular telephones; global positioning satellites; handheld radios; radio, analog, digital and electronic pagers; telephone calling cards, including pre-paid telephone calling cards, magnetically encoded; computer software for use by telecommunication subscribers and user manuals and instruction books sold as a unit, namely, computer software for connecting users to a global computer network, accessing information downloaded from a global computer network, data compression, computer telephony, providing access to electronic messaging services, creating, sending and receiving electronic messages and multimedia applications; computer software for use over computer networks, namely, network management software, data delivery software, network utility software, server operating system software; protocol software, namely, software for the implementation of communications protocols; client server software, namely, computer software for use in interfacing between host computers, servers and web browsers; computer software, namely, operating system programs, device drivers, applications software, application development tool programs, network

management software, data delivery software, network utility software; middleware, namely, software that mediates between a computer's operating system and its application software; e-commerce software to allow users to perform electronic business transactions via a global computer network; user interface software for searching, selecting, browsing, viewing, managing, organizing and navigating content delivered via a global computer network; computer software for searching, selecting, browsing, viewing, managing, organizing and navigating a global computer network-based interactive databases; personal digital assistants; transceivers; network interface cards; digital audio and video recorders; cameras, subscriber identity module (SIM) cards" in International Class 9, issued on December 14, 2004 and based on a first use date of April 30, 2003.

28.     Plaintiffs also have the right to use the following marks in commerce:

(a)     Incontestable United States Trademark Registration No. 1,298,084 for AT&T, used in connection with "telecommunications services and transmission of data via satellite and telecommunications link" in International Class 38, issued on September 25, 1984 and based on a first use date of August 1, 1983;

(b)     Incontestable United States Trademark Registration No. 1,353,769 for AT&T, used in connection with "telephones" in International Class 9, issued on August 13, 1985 and based on a first use date of December 23, 1983;

(c)     Incontestable United States Trademark Registration No. 1,970,579 for AT&T, used in connection with "telecommunications services, namely location independent personal telecommunications services comprising mobile, voice, data, and facsimile services" in International Class 38, issued on April 23, 1996 and based on a first use date of August 27, 1995;

(d)     Incontestable United States Trademark Registration No. 2,076,846 for AT&T, used in connection with "telecommunications products, namely, telephones; telephone systems, comprised of a handset and console unit with console features, namely, standard telephone functions, one-touch dialing, call progress monitoring, group listening, clock/calendar and alarm, electronic display, and modules for features, namely, automatic dialing, call restriction, stored message recall, and custom calling, also known as telesystems; cordless telephones; speakerphones, also known as hand free telephone apparatus; mobile telecommunication equipment comprising a control telephone unit, transceiver and antenna; mobile telephones and component parts thereof; telephone installation apparatus, namely, phonemounts, dual outlet adaptors, telephone outlets, modular jacks, wire junctions and plug-in converters" in International Class 9, issued on July 8, 1997 and based on a first use date of July 1983;

(e)     Incontestable United States Trademark Registration No. 2,110,288 for AT&T, used in connection with "telecommunications service, namely, long

distance and international voice, text, facsimile, video and data telecommunications services; frame relay telecommunications services; telecommunications network management services, comprised of activation of telecommunication networks, putting network protocols in order and network extensions; virtual network telecommunications services; electronic mail and voice mail and messaging services; packet services; computer aided transmission of messages and images; audio and video teleconferencing services; private line voice, text, facsimile, video and data telecommunications services; transmission of voice, text facsimile, video and data via satellite, terrestrial and undersea telecommunications links; television transmission services; 800 telecommunications services; 900 telecommunications services; switched voice data, video and multimedia services; Asynchronous Transfer Mode (ATM) services; Very Small Aperture Satellite Terminal (VSAT) Service; telecommunications transponder leasing services; and location independent personal communications services comprising mobile, voice, data and facsimile services" in International Class 38, issued on November 4, 1997 and based on a first use date of August 1, 1993;

(f)     United States Trademark Registration No. 3,068,918 for AT&T, used in connection with "telecommunications hubs and switches; wireline router; wireless routers; standalone wireless access points; integrated routers which include a modem; digital subscriber line modems otherwise known as DSL modems, cable modems and satellite modems that interface directly with digital subscriber lines otherwise known as DSL, satellite data or cable broadband data services; network interface card adaptors otherwise known as NIC adapters; print servers; RJ 45 data transmission cables; telephone line filters; telecommunications couplers; telecommunications modular plugs; corded and cordless wireline teleconferencing telephones" in International Class 38, issued on March 14, 2006 and based on a first use date of June 1, 2005; and

(g)     The stylized AT&T and GOPHONE marks, which are used in connection with telecommunications products and services, as depicted below:





29.     Plaintiff AT&T Mobility II, LLC's aforementioned registered trademarks as described in Paragraph 27 and Plaintiffs' aforementioned trademark rights as described in

Paragraph 28 (hereinafter collectively referred to as "Plaintiffs' Trademark Rights") constitute the lawful, valued, subsisting property of Plaintiffs, and as a result of the high quality of Plaintiffs' products, services, sales, promotion and advertising thereof, the marks have become an intrinsic and essential part of the valuable goodwill and property of Plaintiffs, and are well known and established to customers and the trade as symbols identifying and distinguishing Plaintiffs' products and services, and signifying distinctive services of exceptional quality. True and correct copies of the certificates of registration issued by the United States Patent and Trademark Office for the registered GOPHONE and GO PHONE trademarks are attached as **Composite Exhibit A**.

## TERMS AND CONDITIONS REGARDING THE
## USE OF AT&T PAY AS YOU GO GOPHONES

30. AT&T GoPhones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the GoPhones. A copy of the Terms and Conditions is attached as **Exhibit B**. These Terms and Conditions are set forth in printed inserts that are included in the packaging of every AT&T GoPhone. The Terms and Conditions and language on the packaging constitute a valid binding contract.

31. Limitations set out in the Terms and Conditions are intended to restrict the use of AT&T GoPhones to AT&T's service. However, a legitimate AT&T customer may request that AT&T unlock his or her phone, and will receive assistance with unlocking the GoPhone if certain conditions are satisfied, including prior activity on the GoPhone.

## DEFENDANTS' MISCONDUCT

32.     AT&T has discovered that, although large quantities of its GoPhones are being purchased at retailers throughout the United States, a significant number of these GoPhones are not being activated for use on the AT&T network.

33.     Instead, entities and individuals such as Defendants are purchasing and fraudulently reselling AT&T GoPhones in bulk quantities. The GoPhones are taken out of their original packaging, "unlocked," all accessories, warranties, and manuals are removed, and the GoPhones are shipped overseas and sold. Defendants undertake these actions for profit, not for the sole purpose of lawfully connecting to a wireless telephone communication network.

34.     Once an AT&T GoPhone has been unlocked, it is operable on other wireless networks. AT&T no longer has a revenue source to recoup the invested subsidy on that GoPhone.

35.     Defendants are knowingly and willfully engaged in an enterprise that traffics in and resells unlocked AT&T GoPhones, or AT&T GoPhones that they know, or reasonably should know, will be unlocked and resold under the AT&T trademarks as new for a substantial profit.

36.     The Defendants have purchased and/or sold large quantities of AT&T GoPhones through various co-conspirators. Defendant Khoja is the owner of Wireless Exclusive, which profits from and traffics in the purchase and fraudulent sale of AT&T GoPhones. As such, Wireless Exclusive and its owner and/or directors are participating in and profiting from the Illicit Bulk Resale Scheme.

37.     Defendants have actively solicited conspirators to purchase large quantities of AT&T GoPhones from various retailers and to sell those phones to them.

38.     Defendants and their co-conspirators are directly, or are knowingly facilitating others who are, bulk purchasing AT&T GoPhones at retail stores or online, unlocking the AT&T GoPhones, improperly repackaging the AT&T GoPhones under the AT&T Mark, removing all warranties and manuals, and trafficking and reselling the unlocked, altered, and repackaged AT&T GoPhones to end consumers or to co-conspirators who sell the GoPhones to end consumers for profit.  Defendants are bulk selling and shipping AT&T GoPhones to presently unknown co-conspirators, including buyers outside of the United States, for profit with the intent and knowledge that the GoPhones are, or will be, unlocked.

39.     Massive quantities of empty AT&T GoPhone packages and materials, discarded after the phones have been removed and unlocked or prepared for unlocking, have been observed in and around the Defendants' business.

## SUBSTANTIAL HARM CAUSED BY DEFENDANTS' MISCONDUCT

40.     Defendants' actions substantially harm AT&T by depriving AT&T of the opportunity to recoup its losses on the sale of its AT&T GoPhones and to earn revenues by providing wireless service to legitimate AT&T GoPhone consumers.

41.     Because the Defendants often remove the GoPhones from their original packaging and/or ship the GoPhones outside the United States, they do not carry the manufacturer's warranty.  Accordingly, GoPhones differ materially from the genuine AT&T GoPhones sold by authorized AT&T retailers, all of which carry a manufacturer's warranty.

42.     In addition, removing the GoPhones from the original packaging and manipulating the software are material alterations that irreparably harm AT&T because they deprive AT&T of the means to control the quality of its product.

43.     The conduct of Defendants, their unknown co-conspirators, and others who engage in the unlawful bulk purchasing, unlocking, and sale of unlocked and altered AT&T GoPhones has also resulted in a shortage of available AT&T GoPhones, thereby causing harm to AT&T and its relationship with retailers and consumers because AT&T is not able to supply retailers with sufficient handsets to satisfy the demand from legitimate consumers.  As a result, AT&T is losing potential consumers to other wireless competitors.

44.     Defendants' actions substantially harm AT&T and consumers who ultimately purchase AT&T handsets that have been improperly unlocked.  Consumers of the improperly unlocked phones are misled about the source, sponsorship, and origin of their wireless phone.

45.     The process of improperly unlocking and reselling an AT&T GoPhone voids the manufacturer's warranty on the device.  In addition, these unlocked repackaged AT&T GoPhones are sold without the original manufacturer's warranty documentation.  Both consumers and AT&T are harmed when an AT&T GoPhone that has been altered or sold by Defendants or their co-conspirators is submitted for warranty repair.  Because the warranty is voided on unlocked GoPhones or GoPhones sold without warranty documentation, consumers who purchase AT&T GoPhones from Defendants or their co-conspirators are unable to obtain warranty service in the event they experience problems with their GoPhones.  As a result, AT&T's reputation suffers further.

46.     In addition, Defendants' improper and unauthorized resale of AT&T GoPhones for use on other networks but still bearing the Marks may result in calls by confused consumers to AT&T's customer relations department.  AT&T incurs substantial costs associated with such calls and its reputation is further damaged because AT&T may be unable to assist those consumers because Defendants' actions voided the warranties and because Defendants sold the

GoPhones for use on another provider's network. These problems do not exist for legitimate AT&T customers.

47.    Defendants' conduct has also resulted in the dilution of AT&T's trademark rights, substantial harm to AT&T's business reputation and goodwill, and a greater likelihood of confusion, mistake, and deception about the source of origin of AT&T products the Defendants unlawfully sold and about the relationship between AT&T and Defendants.

## CIVIL PROCEEDINGS IN OTHER FEDERAL COURTS

48.    Federal courts have recognized that conduct similar or identical to Defendants' violates existing civil laws.

49.    TracFone Wireless, Inc. ("TracFone"), T-Mobile USA, Inc. ("T-Mobile"), Nokia Corporation ("Nokia"), and Virgin Mobile USA, LLC ("Virgin Mobile") have filed various independent lawsuits in numerous federal courts across the country against other defendants similarly engaged in the practice of defrauding legitimate consumers by bulk purchasing prepaid wireless telephones and hacking, repackaging, and reselling the altered prepaid wireless phones for profit.

50.    TracFone, Nokia, and Virgin Mobile have obtained Final Judgments and Permanent Injunctions in these cases, copies of which are attached hereto as **Composite Exhibit C**. Failure to abide by the injunction in one Virgin Mobile case resulted in a finding of contempt against several defendants, and the United States Attorney for the Southern District of Texas is pursuing criminal contempt charges against one of those defendants. Copies of the Memorandum Opinion and Order of Contempt, Application for Criminal Contempt, and the Order finding cause to believe the defendant is guilty of criminal contempt, are attached hereto

as **Composite Exhibit D**. The criminal contempt case is set for trial in March, 2008, and the defendant is currently free on $50,000 bond.

**COUNT ONE**

**BREACH OF CONTRACT**

AT&T reasserts the allegations set forth in paragraphs 1 through 50 above, as though fully set forth herein.

51. By purchasing AT&T GoPhones, Defendants acknowledged and agreed to the Terms and Conditions included with each GoPhone as printed on the package and as contained in the printed inserts packaged with the GoPhones.

52. The Terms and Conditions constitute a valid binding contract between AT&T and Defendants.

53. AT&T has performed or tendered performance in accordance therewith.

54. Defendants have breached the Terms and Conditions by, *inter alia,* purchasing AT&T GoPhones with the intent that such phones will not be activated and used on AT&T's service, but instead with the intent to unlock, repackage, and resell the phones and by otherwise using the GoPhones for a fraudulent purpose.

55. AT&T has suffered damages as a result of Defendants' breach of the Terms and Conditions.

**COUNT TWO**

**INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS**
**15 U.S.C. § 1114 [§32 of the Lanham Act]**

AT&T reasserts the allegations set forth in paragraphs 1 through 50 above, as though fully set forth herein.

56.     Defendants' and/or their co-conspirator's aforementioned conduct constitutes use of the federally registered GOPHONE and GO PHONE marks (hereinafter referred to as the "GOPHONE Marks") without authorization in connection with their conspiracy to sell and offer for sale unlocked, altered AT&T GoPhones, which downstream customers will discover have been altered from their original state and do not include the warranties, accessories, manuals and related items that constitute part of the AT&T GoPhone package.

57.     Defendants' and/or their co-conspirators' use of the GOPHONE Marks in connection with the sale of unlocked, altered AT&T GoPhones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' altered products, and the relationship between AT&T and Defendants.

58.     Defendants' and/or their co-conspirator's unauthorized use of the GOPHONE Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation and goodwill of AT&T.

59.     Defendants' and/or their co-conspirators' use of the GOPHONE Marks in connection with the unlocked, altered AT&T GoPhones, which do not include warranties, manuals, accessories and related items made part of the AT&T GoPhone package, constitutes a misappropriation of the distinguishing and identifying GOPHONE Marks that were created as a result of significant effort and expense. Defendants' and/or their co-conspirators' use of the GOPHONE Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with AT&T, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by AT&T.

60. Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, AT&T and the reputation and goodwill of AT&T, and each has unjustly enriched and will continue to unjustly enrich him, her or itself at the expense of AT&T. Plaintiff AT&T Mobility II, LLC is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

61. Defendants' aforesaid acts constitute willful infringement of Plaintiff AT&T Mobility II, LLC's federally registered trademarks in violation of 15 U.S.C. § 1114.

## COUNT THREE

## FEDERAL TRADEMARK DILUTION

AT&T reasserts the allegations set forth in paragraphs 1 through 50 above, as though fully set forth herein.

62. Due to Plaintiff AT&T Mobility II, LLC and its predecessor-in-interest's prominent and lengthy use and promotion of the distinctive GOPHONE Marks, the GOPHONE Marks are famous and acquired such fame well prior to the acts of Defendants complained of herein.

63. Defendants' sale of unlocked, altered AT&T GoPhones is likely to dilute the distinctive quality of the Plaintiff AT&T Mobility II, LLC's GOPHONE Marks in violation of the Federal Anti-dilution Act of 1995, 15 U.S.C. § 1125(c).

64. Defendants' adoption and continued use of the GOPHONE Marks was knowing, willful and intended to trade on Plaintiff AT&T Mobility II, LLC's reputation and goodwill. As such, Defendants' unauthorized use of the GOPHONE Marks has enabled them to earn profits to

which they are not in equity and good conscience entitled to and have unjustly enriched themselves at Plaintiff AT&T Mobility II, LLC's expense and damage.

65. Defendants' aforesaid conduct has caused and will continue to cause irreparable injury to Plaintiff AT&T Mobility II, LLC and to the goodwill associated with its GOPHONE Marks. Plaintiff AT&T Mobility II, LLC has no adequate remedy at law and will continue to be irreparably injured unless and until this Court permanently enjoins Defendants' misconduct.

## COUNT FOUR

### FEDERAL COMMON LAW TRADEMARK INFRINGEMENT AND FALSE ADVERTISING
### 15 U.S.C. § 1125 (a)(1)(A) and (B) [§43(a) of the Lanham Act]

AT&T reasserts the allegations set forth in paragraphs 1 through 50 above, as though fully set forth herein.

66. Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of Plaintiffs' Trademark Rights without authorization in connection with their conspiracy to sell and offer for sale unlocked, altered AT&T GoPhones, which downstream customers will discover have been altered from their original state and do not include the warranties, accessories, manuals and related items that constitute part of the AT&T GoPhone package.

67. Defendants' and/or their co-conspirators' use of Plaintiffs' Trademark Rights in connection with the sale of unlocked, altered AT&T GoPhones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' altered products, and the relationship between AT&T and Defendants.

68. Defendants' and/or their co-conspirators' unauthorized use of Plaintiffs' Trademark Rights is likely to continue in the future, all to the great and irreparable damage to the business, reputation, and goodwill of AT&T.

69.     Defendants' and/or their co-conspirators' use of Plaintiffs' Trademark Rights in connection with the unlocked, altered AT&T GoPhones, which do not include warranties, manuals, accessories and related items made part of the AT&T GoPhone package, constitutes a misappropriation of the distinguishing and identifying Trademark Rights that were created as a result of significant effort and expense. Defendants' and/or their co-conspirators' use of Plaintiffs' Trademark Rights evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with AT&T, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by AT&T.

70.     Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, AT&T and the reputation and goodwill of AT&T, and each has unjustly enriched and will continue to unjustly enrich him, her or itself at the expense of AT&T. AT&T is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

71.     Defendants' use of Plaintiffs' Trademark Rights in commercial advertising or promotion misrepresents the nature, characteristics, and/or qualities of their infringing products.

72.     Defendants' activities constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) and (B).

73.     AT&T is entitled to appropriate relief as prayed for hereinafter, including preliminary and permanent injunctive relief.

74.     Defendants knew or should have known that AT&T has the right to use Plaintiffs' Trademark Rights and that Defendants had no legal right to use Plaintiffs' Trademark Rights on their infringing products. Defendants are engaged in and continue to engage in the alleged activities knowingly, willfully and deliberately, so as to justify the assessment of exemplary damages and an award of Plaintiffs' lost profits, Defendants' profits, and Plaintiffs' attorneys' fees.

## COUNT FIVE

## COMMON LAW UNFAIR COMPETITION

AT&T reasserts the allegations set forth in paragraphs 1 through 50 above, as though fully set forth herein.

75.     Defendants' conduct in purchasing and/or inducing others to purchase the GoPhones, disabling or unlocking, inducing others to disable or unlock, and/or assisting others to disable or unlock the GoPhones, and reselling and/or assisting others to resell the GoPhones as new for activation on other wireless networks constitutes unfair competition, under the common law of the State of Texas.

76.     Defendants' conduct in selling, inducing others to sell, and/or assisting others to sell unlocked GoPhones for the purpose of being resold, which undermines AT&T's subsidy program, constitutes unfair competition under the common law of the State of Texas. Defendants' conduct complained of herein was intentional, malicious, and willful.

## COUNT SIX

## CONTRIBUTORY TRADEMARK INFRINGEMENT

AT&T incorporates and re-alleges the allegations set forth in paragraphs 1 through 50 above, and further alleges:

77.     By misappropriating and using Plaintiffs' Trademark Rights in connection with the Illicit Bulk Resale Scheme, Defendants knowingly aided and enabled distributors and/or sellers of their products to market them to members of the general public in a way that infringes Plaintiffs' Trademark Rights by placing in the hands of distributors and/or sellers an instrument of consumer deception.

78.     Defendants' unlawful, unauthorized, and unlicensed sale of the unlocked AT&T GoPhones has contributed to the creation of express and implied misrepresentations that the AT&T GoPhones, as sold by Defendants, were created, authorized or approved by AT&T, and include warranties.

79.     Upon information and belief, Defendants' conduct leads to post-sale confusion by causing consumers who purchase AT&T GoPhones altered by Defendants to believe that they are purchasing handsets approved by AT&T and containing original warranties.

80.     Defendants' conduct constitutes contributory infringement in violation of the Trademark Act.  Defendants' conduct is intentional, malicious and willful.

## COUNT SEVEN

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS AND PROSPECTIVE ADVANTAGE

AT&T incorporates and re-alleges the allegations set forth in paragraphs 1 through 50 above, and further alleges:

81.     A business relationship, and an expectancy of business relationships, exists between AT&T and retailers of AT&T GoPhones and prepaid airtime minutes.

82.    A business relationship, and an expectancy of business relationships, exists between AT&T and the purchasers and prospective purchasers of its AT&T GoPhones and service.

83.    There is a high probability of future economic benefit to AT&T as a result of these current and prospective business relationships.

84.    Defendants have knowledge of and have intentionally and unjustifiably interfered with, and/or have knowingly facilitated a conspiracy to interfere with, these current and prospective business relationships between AT&T, authorized retailers who sell AT&T products, and legitimate AT&T customers.

85.    Specifically, but without limitation, Defendants knew that AT&T had business relationships with retailers of AT&T GoPhones to provide said retailers with sufficient quantities of AT&T GoPhones for said retailer's legitimate consumers' use of these GoPhones exclusively on AT&T's network.    Defendants' deliberate actions in the Illicit Bulk Resale Scheme have resulted in substantial numbers of GoPhones that are never activated on AT&T service and have further caused shortages of available AT&T GoPhones, thereby substantially harming AT&T and its relationship with retailers because AT&T is unable to supply retailers with sufficient GoPhones to satisfy the demands from legitimate consumers.    Moreover, Defendants knew that AT&T had business relationships with legitimate consumers of AT&T GoPhones.    Further, Defendants knew that AT&T GoPhones are designed for the exclusive use by AT&T customers on AT&T's wireless network.    Defendants also knew that AT&T had business relationships with legitimate consumers of AT&T prepaid airtime minutes to ensure the proper function and use of AT&T GoPhones.

86.     Defendants are intentionally interfering with these relationships through improper means and in violation of the law.

87.     Defendants engaged in these acts of interference with a conscious desire to prevent the relationships from occurring, or Defendants knew that the interference was certain or substantially certain to occur as a result of their conduct.

88.     AT&T has been proximately damaged and continues to be damaged as a result of Defendants' interference.

## COUNT EIGHT

### TORTIOUS INTERFERENCE WITH CONTRACT

AT&T incorporates and re-alleges the allegations set forth in paragraphs 1 through 50 above, and further alleges:

89.     The original purchasers of the GoPhones that were ultimately sold to Defendants entered into a valid, binding contract with AT&T pursuant to the terms set forth on the packaging of the handset.  In accordance with those terms, the original purchasers of the GoPhones agreed to activate the phones for use on AT&T wireless service and abide by all restrictions on and protections of AT&T's intellectual property.

90.     Defendants' actions complained of herein were made with full knowledge and awareness of the contractual provisions restricting the use of the GoPhones and AT&T's intellectual property.

91.     Defendants have engaged in intentional acts designed to induce a breach or disruption of the contractual relationship without legitimate justification.

92.     AT&T has suffered damages as a result of Defendants' conduct.

93.     Defendants' conduct constitutes tortious interference with contract under the common law of the State of Texas. Defendants' conduct was intentional, malicious, and willful, such that an award of punitive damages is appropriate.

## COUNT NINE

## HARM TO AT&T'S GOODWILL AND BUSINESS REPUTATION

AT&T incorporates and re-alleges the allegations set forth in paragraphs 1 through 50 above, and further alleges:

94.     AT&T is in the business of, and has earned a reputation for, providing its customers with high quality wireless telephone service and customer service.

95.     The AT&T GoPhones that Defendants and/or their co-conspirators unlocked and resold as new are branded with Plaintiffs' Trademark Rights.

96.     Defendants' conduct has resulted in substantial harm to AT&T as more particularly set forth above.

97.     Defendants' conduct in selling or knowingly facilitating the sale of altered AT&T GoPhones has injured the good will earned by AT&T as well as its business reputation, in violation of TEX. BUS. & COM. CODE ANN. § 16.29 (Vernon 2007), and will continue to do so unless enjoined.

98.     AT&T requests permanent injunctive relief against Defendants pursuant to TEX. BUS. & COM. CODE ANN. § 16.29 (Vernon 2007).

## COUNT TEN

## CIVIL CONSPIRACY

AT&T incorporates and re-alleges the allegations set forth in paragraphs 1 through 50 above, and further alleges:

99.     An agreement and conspiracy existed and continues to exist between and among the Defendants and other co-conspirators to unlawfully bulk purchase, traffic, and resell unlawfully unlocked and altered AT&T GoPhones under Plaintiffs' Trademark Rights, which results in federal common law and statutory trademark infringement, common law unfair competition, contributory trademark infringement, tortious interference with business relationships and prospective advantage, and a violation of TEX. BUS. & COM. CODE ANN. § 16.29 (Vernon 2007).

100.     Defendants knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy as set forth with more particularity in this Complaint.

101.     AT&T has been proximately damaged by the conspiracy and Defendants' actions in furtherance thereof.

## COUNT ELEVEN

## UNJUST ENRICHMENT

AT&T incorporates and re-alleges the allegations set forth in paragraphs 1 through 50 above, and further alleges:

102.     By bulk purchasing the AT&T GoPhones at less than the manufacturer cost of the GoPhones for use on wireless networks other than AT&T's wireless network, Defendants have obtained benefits from AT&T which have led to significant financial gain to Defendants through their resale of the bulk purchased AT&T GoPhones.

103.     Defendants have acquired the benefits voluntarily and with full knowledge of the benefits.

104. Defendants have retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain the benefits without paying AT&T the value of the benefits Defendants' acquired.

## DEMAND FOR JURY TRIAL

AT&T demands a trial by jury on all triable issues.

WHEREFORE, Plaintiffs, AT&T Mobility LLC and AT&T Mobility II LLC respectfully request that this Court enter final judgment and permanent injunctive relief in their favor and against Defendants, as follows:

(a) awarding AT&T its compensatory, consequential, statutory and special damages including, without limitation, its lost profits, Defendants' profits, loss of goodwill and damage to its reputation, as well as exemplary damages, together with pre and post judgment interest, as provided by law;

(b) awarding AT&T its reasonable attorneys' fees and costs associated with this action;

(c) awarding AT&T permanent injunctive relief against Defendants enjoining Defendants from engaging in the unlawful practices described in this Complaint;

(d) requiring Defendants, pursuant to the Lanham Act, to deliver their entire inventory of phones bearing or infringing Plaintiffs' Trademark Rights or a confusingly similar copy thereof; and

(e) granting such further relief as this Court deems just and proper.

Dated: February 5, 2008

Respectfully submitted,

By: _____

James B. Baldinger
Florida Bar No. 869899
Admitted United States District Court for the
        Northern District of Texas
CARLTON FIELDS, P.A.
222 Lakeview Avenue, Suite 1400
West Palm Beach, FL 33401
Telephone: (561) 659-7070
Facsimile: (561) 659-7368
Email: jbaldinger@carltonfields.com

David H. Harper
Texas Bar Number 09025540
Purvi J. Patel
Texas Bar Number 24008521
HAYNES AND BOONE, LLP
3100 Bank of America Plaza
901 Main Street
Dallas, Texas 75202
Telephone: 214.651.5247
Facsimile: 214.200.0463
Email: david.harper@haynesboone.com
        purvi.patel@haynesboone.com

*Attorneys for AT&T Mobility LLC and AT&T
Mobility II LLC*