

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

VIRGIN MOBILE USA, LLC,

    *Plaintiff*,

v.                                    CIVIL ACTION NO. H-06-2444

WORLD MMP INC., conducting business as
UNICOMM WIRELESS, MUHAMMAD
"Mubi" MUBASHIR, ABDUL QADIR
PAREKH, and ABDUL WAHAB MOOSA,

    *Defendants*.

## MEMORANDUM OPINION AND ORDER OF CONTEMPT

The issue before the court is whether Defendants should be held in civil contempt for violating the Court's August 10, 2006, Order of Final Judgment and Agreed Permanent Injunction ("Permanent Injunction Order") (Doc. 22). For the reasons set out below,[1] the court finds the clear and convincing evidence shows Defendants acted in direct violation of the Permanent Injunction Order. The court, therefore, holds all Defendants in civil contempt.

I.        Background and Relevant Facts

In early 2006, Plaintiff Virgin Mobile USA, LLC ("Virgin Mobile") discovered numerous third parties engaging in the unlawful sale of its cellular phone handsets. The basic scheme involved purchasing Virgin Mobile handsets in bulk at a preferential price, disabling certain security features, reselling the handsets at retail value or higher, and then pocketing the difference. During the course of its investigation, Virgin Mobile learned that Defendants World MMP Inc., conducting business as Unicomm Wireless, Muhammad "Mubi" Mubashir, Abdul Quadir Parekh, and Abdul Wahab Moosa (collectively, "Defendants" or "Unicomm") were engaged in the same scheme involving Virgin Mobile's Kyocera K10 Royale handsets. Virgin

---

[1] Pursuant to Fed. R. Civ. P. 52(a), this memorandum opinion and order constitutes the court's findings of fact and conclusions of law.

-1-

Mobile filed suit seeking injunctive relief and damages. Within weeks of the suit's initiation, the parties agreed to a permanent injunction barring Defendants from dealing in Virgin Mobile products. Accordingly, the court issued its order of permanent injunction, enjoining Defendants

> from purchasing, offering to purchase, reselling, *offering to resell*, shipping, and tampering with the software, of or inducing or soliciting any other person or entity to purchase, offer to purchase, resell, *offer to resell*, ship, and tamper with the software, of any Virgin Mobile wireless handset, including without limitation the Kyocera K10 wireless handset.

Permanent Injunction Order (Doc. 22) (emphasis added). The permanent injunction constituted the final judgment in this action, and the court expressly retained jurisdiction to enforce the injunction. *Id.*

Subsequently, Virgin Mobile enlisted the aid of expert fraud investigators to discover additional bulk schemes and to monitor compliance with this and other relevant permanent injunctions.[2] The fraud team posted online advertisements that purported to seek purchase of the (unlawfully) sold handsets. On December 7, 2006, a Virgin Mobile fraud analyst posted an ad entitled "WTB[3] Kyocera New." The ad included the message, "Buying Kyocera New Stock," with instructions to call or e-mail regarding the "inventory available." *See* Pl. Hr'g. Ex. 1. The very same day, Defendant Abdul Quadir Parekh ("Parekh"), operating as Unicomm Wireless, contacted the agent about the ad. Parekh claimed to "[h]ave in stock 300 pcs[4] [in] bulk packaging [for] $29.00" and inquired into the buyer's interest in "other phones." Pl. Hr'g. Ex. 2. Using the pseudonym "Daniel Mergan," the fraud investigator replied to Parekh's email to determine the model for sale. *See* Pl. Hr'g. Ex. 3. Apologizing for forgetting the "main thing,"

---

[2] There have been a myriad of permanent injunctions issued across the United States relating to other parties engaged in similar conduct *See, e.g, Virgin Mobile USA, LLC v. SNS Comm'cns*, No. 06-Civ-5060 (S.D. N.Y.); *Virgin Mobile USA v. EMYC USA, Corp.*, No. 06-21787-CIV-DLF (S.D. Fla); *Virgin Mobile USA, LLC v. Solarcomm Wireless*, No. CV-06-1861 (D. Ariz.); *Virgin Mobile USA, LLC v. Iser*, No 06-cv0434 (N.D. Okla.); *Virgin Mobile USA, LLC v. Houston Teklink Inc.*, NO. 06-cv-02766 (S.D. Tex.); *Virgin Mobile USA, LLC v. Trade Vision, Inc.*, No. H-06-cv-2960 (S.D. Tex.); *Virgin Mobile USA, LLC v. Thirwani*, Civ. A. No. 2:06-cv-2504 (D. Ariz.); *Virgin Mobile USA, LLC v. Chapman*, Civ. A. No. 2:06-cv-2664 (D. Ariz.); *Virgin Mobile USA, LLC v. Freelance Marketing, Inc.*, No. 3:06-cv-0217 (S.D. Ohio); *Virgin Mobile USA, LLC v. TXT Technology, Inc.*, No. 06-7485 (C.D. Cal.); and *Virgin Mobile USA, LLC v. Van Loc Dealer, et al.*, No.06-1039 (W.D. Wash).

[3] "WTB" is apparently the accepted parlance for "want to buy."

[4] Pieces

Parekh wrote back and declared the inventory was "K9 Virgin Mobile Oyester [sic]." Pl. Hr'g Ex. 4. The investigator feigned interest and asked if the price could be negotiated to $28.00. Pl. Hr'g. Ex. 5. Parekh replied that he could "do $28.00" but was "sold out" of that particular Virgin Mobile model; however, he claimed that 200-300 more were arriving the following week. Pl. Hr'g Ex. 6. The investigator and Parekh exchanged several more emails before the "deal" was terminated and the ruse revealed.

Plaintiff immediately requested entry of an order to show cause why Defendants should not be held in contempt (Doc. 23) for violating the Permanent Injunction Order. On January 23, 2007, a show cause hearing was held and evidence heard on the matter. Defendants did not and could not dispute the exchange of emails; however, Muhammad "Mubi" Mubashir ("Mubi"), Abdul Wahab Moosa ("Moosa"), and Parekh each testified in turn to clarify the situation. Mubi, former president of Unicomm claimed he had sold his shares on September 24, 2006, and was no longer affiliated with the company. Moosa, current president of Unicomm, testified unequivocally that Unicomm had not purchased or sold any Virgin Mobile product. Moreover, he claimed the "simple explanation" for the emails is that they constituted a sales technique to "lure" the customer in and offer "other products." He dismissed Parekh's emails as "mere puffing" and not a true "offer to sell" any Virgin Mobile products. Parekh corroborated Moosa's testimony. Parekh explained he did not "offer to sell" any Virgin Mobile products because Unicomm no longer carried such products. Because he never intended to actually sell any Virgin Mobile products, he believed that no "offer to sell" had been made. According to his testimony, Parekh just "wanted to give the impression of legitimacy" and to "probe" the buyer's interest.

Plaintiff argues that the Permanent Injunction Order prohibited "offering to resell" any Virgin Mobile product without limitation or qualification. As such, Defendants are in direct violation of a court order and subject to civil contempt. The court agrees.

II.        <u>Legal Standard on Civil Contempt</u>

A party moving for civil contempt must demonstrate by clear and convincing evidence: (1) that a valid court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order. *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995) (citing *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)); *see also Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999). In the civil contempt context, clear and convincing evidence requires proof "so clear, direct, weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *United States v. Cornerstone Wealth Corp.*, No. 3:98-cv-0601-D, 2006 U.S. Dist. LEXIS 8294, at *5-6 (N.D. Tex. March 3, 2006) (quoting *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995).

III.   Analysis

Under the "clear, direct, weighty and convincing" evidence, the Defendants have acted in direct contradiction of the court's order. Even crediting Defendants' testimony concerning Unicomm not having purchased, tampered, or resold any Virgin Mobile handset since the permanent injunction, the totality of the evidence indicates Parekh's exchange with the undercover agent constituted an "offer of sale." Parekh initiated the contact. He declared the inventory was "K9 Virgin Mobile Oyester [sic]," and he negotiated a price ($28.00). Moreover, Parekh and Moosa's arguments to the contrary are unpersuasive. Parekh's intent, whether to probe the buyer's interest or to fraudulently misrepresent, is not determinative. A finding of contempt is not predicated on the willfulness of the contemnor's actions. *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000). Rather, the court must examine whether the contemnor actually failed to comply with the court's order. *Id.* When Parekh, of his own volition, initiated contact with a potential buyer and offered to sell "new Kyocera" in bulk, he and Unicomm were directly violating the Permanent Injunction Order.

Mubi claims he is no longer associated with Unicomm and should not be liable for the violation of the court's order. Mubi testified that he had resigned as CEO and sold his one-third interest in Unicomm for about $40,000 or $50,000 on September 24, 2006. Payment was due

in installments, but Mubi received all the checks (postdated the 15th and the 30th of every month) in September. Therefore, asserts Mubi, his ties with Unicomm were broken well before any violation. The court does not agree. By his own admission, Mubi deposited the last postdated check on December 30, 2006, proving the existence of a financial link between himself and Unicomm past the December 7th violation. Unicomm's own website continues to list Mubi as "Management," and other selling websites provide similar information. *See* Pl. Hr'g. Exs. 12 and 13. The link between Mubi and Unicomm is not as tenuous as Mubi alleges. Moreover, the court doubts the December 7th violation was an isolated incident. The evidence supports a finding Parekh's "sales technique" was common at Unicomm. This fact implies that violations of the court's order occurred numerous times between August 10th and December 7th, while Mubi was still president of Unicomm. Like Parekh and Moose, Mubi has failed to provide an adequate defense to the direct violations of the Permanent Injunction Order.

IV.     Conclusion

Accordingly, it is hereby

**ORDERED** that all Defendants are held in contempt of the Court's Order of Final Judgment and Agreed Permanent Injunction (Doc. 22);

**ORDERED** that Defendants comply with the Court's Order of Final Judgment and Agreed Permanent Injunction (Doc. 22);

**ORDERED** that Defendants provide a complete accounting of net profits, if any, derived from the sell of Virgin Mobile handsets since the entry of permanent injunction on August 10, 2006. This accounting will be made no later than 20 days following entry of this order of contempt;

**ORDERED** that Defendants deliver to Plaintiff all Virgin Mobile handsets in Defendants' possession. Delivery of the Virgin Mobile handsets, if any, will occur no later than 10 days following entry of this order of contempt;

**ORDERED** that Defendants pay the direct, out-of-pocket costs, including attorney's fees, associated with Plaintiff's efforts to enforce the permanent injunction. Plaintiff

will file an itemized list of its costs within 10 days following entry of this order. These costs will be taxed against Defendants upon final approval by the court; It is further

**ORDERED** that the parties shall withdraw from the Clerk the evidence and shall maintain it for purposes of appeal.

**SIGNED** at Houston, Texas, this 29th day of January, 2007.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE